No. 14-16990

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES MCCALMONT and KATHERINE MCCALMONT,

*Plaintiffs-Appellants,*

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the District of Arizona,
case no. 2:13-cv-02107-HRH, Honorable H. Russel Holland

## BRIEF FOR DEFENDANT-APPELLEE
## FEDERAL NATIONAL MORTGAGE ASSOCIATION

MICHAEL B. MILLER
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000

DEANNE E. MAYNARD
BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 887-8740
DMaynard@mofo.com

*Counsel for Defendant-Appellee Federal National Mortgage Association*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant-appellee Federal National Mortgage Association ("Fannie Mae") states the following: Fannie Mae is a publicly held corporation chartered by the United States Congress. Fannie Mae has no parent corporation. No publicly held corporation owns 10% or more of Fannie Mae's common stock.

Dated: August 3, 2015        s/ Deanne E. Maynard
                                          Deanne E. Maynard

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ........................................................................... iii

STATEMENT OF THE ISSUES ...................................................................... 1

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE CASE ......................................................................... 3

    A.    Fannie Mae's Role In The Home Mortgage Market ............................ 4

    B.    Fair Credit Reporting Act ................................................................. 8

    C.    Plaintiffs' Allegations Regarding Denial Of Credit ........................... 12

    D.    District Court Proceedings .............................................................. 13

SUMMARY OF ARGUMENT ...................................................................... 15

ARGUMENT ............................................................................................. 18

I.    THE DISTRICT COURT CORRECTLY HELD THAT THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT FANNIE MAE IS A "CONSUMER REPORTING AGENCY" ................................. 18

    A.    Plaintiffs' Allegations Demonstrate That Their Claims Are Based On A Lender's Use Of Fannie Mae's Software, Not Any "Assembling or Evaluating" By Fannie Mae Itself ........................... 19

    B.    Plaintiffs' Allegations Are Insufficient To State A FCRA Claim Against Fannie Mae .................................................................... 29

II.    IN THE ALTERNATIVE, FANNIE MAE CANNOT BE LIABLE UNDER THE FCRA BECAUSE IT IS ACTING AS THE LENDER'S LIMITED AGENT ................................................................. 35

CONCLUSION ......................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................18, 25, 26, 28

*Barnes v. Ditech.com*,
2005 WL 913090 (E.D. Pa. Apr. 19, 2005).......................................................30

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................19, 20, 25, 26

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) ..............................................................................34

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ............................................................................27

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ............................................................................23

*Doe I v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) ..............................................................................25

*Estiverne v. Sak's Fifth Ave.*,
9 F.3d 1171 (5th Cir. 1993) ..................................................................................9

*Gillespie v. Trans Union Corp.*,
482 F.3d 907 (7th Cir. 2007) ................................................................................8

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ............................................................................22

*In re Mortg. Elec. Registration Sys., Inc.*,
754 F.3d 772 (9th Cir. 2014) ..............................................................................23

*In re Stac Elects. Secs. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ..............................................................................23

*Johnson v. Federal Home Loan Mortg. Corp.*,
__ F.3d __, 2015 WL 4231519 (9th Cir. July 14, 2015) ..............................19, 23

iii

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................26

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................22

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ..............................................................27

*Mattiaccio v. DHA Group, Inc.*,
    21 F. Supp. 3d 15 (D.D.C. 2014)...................................................37, 38

*Montgomery County v. Fed. Nat'l Mortg. Ass'n*,
    740 F.3d 914 (4th Cir. 2014) .................................................................4

*Rust v. Johnson*,
    597 F.2d 174 (9th Cir. 1979) .................................................................4

*Schneider v. California Dept. of Corrs.*,
    151 F.3d 1194 (9th Cir. 1998) ............................................................27

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir.1999) .............................................................27

*Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc.*,
    610 F.3d 1063 (9th Cir. 2010) ............................................................27

*Thomas v. Cendant Mortg.*,
    2004 WL 2600772 (E.D. Pa. Nov. 15, 2004) .....................................30

*Tritz v. United States Postal Serv.*,
    721 F.3d 1133 (9th Cir. 2013) ............................................................23

*Weidman v. Fed. Home Loan Corp.*,
    338 F. Supp. 2d 571 (E.D. Pa. 2004).............................................37, 38

*Zabriskie v. Fed. Nat'l Mortg. Ass'n*,
    __ F. Supp. 3d __, 2014 WL 9887273 (D. Ariz. Apr. 17, 2014).........31

**STATUTES**

12 U.S.C. § 1716 .......................................................................................4

12 U.S.C. § 1717 .......................................................................................4

iv

12 U.S.C. § 1719 ..................................................................................4, 5

12 U.S.C. § 1719(d) ................................................................................4

12 U.S.C. § 1723a ...................................................................................5

12 U.S.C. § 4502(10) ......................................................................10, 32

15 U.S.C. § 1681a(d)(1)............................................................................29

15 U.S.C. § 1681a(f) .....................................................................*passim*

15 U.S.C. § 1681b(a) .......................................................................36, 38

15 U.S.C. § 1681e(b) ........................................................................8, 13

15 U.S.C. § 1681g(g) ...................................................................*passim*

15 U.S.C. § 1681s(a) (1998) ....................................................................9

## OTHER AUTHORITIES

Advisory Opinion to Cast (Oct. 27, 1997)..............................................29

Fed. R. Civ. P. 59(e)......................................................................15, 28

Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations* at 29 (July 2011) ................................................................................*passim*

H.R. Rep. No. 108-263 (2003)....................................................10, 33, 34

## STATEMENT OF THE ISSUES

1. Whether the district court correctly dismissed plaintiffs' complaint because plaintiffs did not plausibly allege that Fannie Mae is "assembling or evaluating" consumer information as required by the Fair Credit Reporting Act's ("FCRA") definition of "consumer reporting agency" in 15 U.S.C. § 1681a(f).

2. Whether, in the alternative, the district court correctly dismissed the complaint because Fannie Mae does not meet the statutory elements of a "consumer reporting agency" as Fannie Mae does not "furnish[] consumer reports to third parties within the meaning of 15 U.S.C. § 1681a(f)."

## INTRODUCTION

The district court correctly dismissed plaintiffs' FCRA claim. The complaint does not plausibly allege facts that would support the legal conclusion that Fannie Mae is a "consumer reporting agency" under the FCRA. To be liable as a "consumer reporting agency," the FCRA's plain language requires, among other elements, that a defendant be the one "assembling or evaluating" consumer credit information. 15 U.S.C. § 1681a(f). The district court correctly held that the complaint does not (and cannot) plausibly allege that *Fannie Mae* assembles or evaluates plaintiffs' information. Rather, the complaint alleges at most that *lenders* use software licensed from Fannie Mae to assemble and evaluate plaintiffs' information. Under settled FCRA principles (which plaintiffs do not and cannot

contest), a provider of software is not a consumer reporting agency. Only the *user* of that software can be considered to be "assembling or evaluating" the information. This conclusion is consistent with Section 1681g(g), which specifically addresses a lender's use of automated underwriting system software such as Fannie Mae's Desktop Underwriter. That provision presupposes that the provider of the automated underwriting system is *not* a consumer reporting agency, even if that automated underwriting system assembles or evaluates consumer credit information.

On appeal, plaintiffs contend that their complaint alleges that Fannie Mae, not the lender, assembled or evaluated their credit information and that the district court improperly relied on "evidence" from Fannie Mae's counsel. But that is not what their complaint says (nor could it), and the district court did not rely on any "evidence" from Fannie Mae's counsel. The district court relied only on plaintiffs' allegations and documents incorporated by reference into the complaint— documents that plaintiffs relied upon and did not object to in the district court. These allegations and documents demonstrate that the *lender* licenses Fannie Mae's software and that it is the *lender* that uses that software to analyze information the lender provides or obtains from others with respect to a potential loan. At best, the complaint contains a number of bald legal conclusions, which the district court was not required to assume as true. As is now well established,

the mere recitation of the elements of a cause of action is insufficient to survive a motion to dismiss. The complaint contains nothing more.

In the alternative, even if this Court were to determine that plaintiffs have sufficiently alleged that Fannie Mae assembles or evaluates consumer credit information (and they did not), the district court's dismissal should nevertheless be affirmed. To be a "consumer reporting agency," Fannie Mae also must have furnished information to "third parties." 15 U.S.C. § 1681a(f). Under this provision, an agent's furnishing of information to its principal does not meet the "third party" requirement of Section 1681a(f). Here, by the terms of the software license agreement between the lenders and Fannie Mae, Fannie Mae at most provided information under an express limited-agency relationship. Those terms, which were incorporated by reference into the complaint, provide expressly that Fannie Mae is the lenders' limited agent with respect to the operation of software. Thus, any actions Fannie Mae took with respect to plaintiffs' credit information was as the lenders' agent at the direction of the respective lenders. A principal is not a "third party" for purposes of a cause of action under the FCRA.

The judgment should be affirmed.

## STATEMENT OF THE CASE

The facts set forth on appeal are based on the complaint and on documents referenced in and incorporated into the complaint.

3

### A.    Fannie Mae's Role In The Home Mortgage Market

Fannie Mae is a private corporation and government sponsored enterprise created by Congress to make home ownership more affordable for low- and middle-income people.  *See* 12 U.S.C. §§ 1716-17.  Fannie Mae accomplishes this goal by purchasing loans that meet certain criteria from lenders.  This allows lenders to make more loans to borrowers.

In particular, Congress created Fannie Mae to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation."   12 U.S.C. § 1716; *see* ER193 ¶ 12.  Fannie Mae carries out its statutory mission by purchasing mortgages originated by lenders, pooling the mortgages into investment instruments known as mortgage-backed securities, and selling those mortgage-backed securities to raise capital for further purchases.  12 U.S.C. § 1719; *Montgomery County v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 918 (4th Cir. 2014) (describing Fannie Mae's role in the housing market); ER194 ¶ 16.  By purchasing mortgages from lenders, Fannie Mae creates additional liquidity in the mortgage market so that lenders are able to originate more mortgage loans.  12 U.S.C. § 1719(d); *Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir. 1979) ("Congress intended FNMA to operate as a reserve market for mortgage investors and to

thereby facilitate the distribution of investment capital available for home mortgage financing.").

As a government sponsored enterprise, Fannie Mae has been granted certain enumerated powers by Congress. 12 U.S.C. § 1723a. Congress also has precluded Fannie Mae from engaging in certain other activities—such as originating mortgage loans itself. *Id.* § 1719(a)(2)(B).

Fannie Mae does not purchase every mortgage. Fannie Mae purchases only mortgages that "are less than $417,000, and have certain prescribed risk characteristics." ER194 ¶ 15. Fannie Mae publishes and makes available for free its guidelines to lenders in the Fannie Mae Selling Guide.[1] This Selling Guide "outlines the specific requirements necessary for eligibility for Fannie Mae purchase." ER194 ¶ 15; *see* ER213 ¶ 3 (explaining that loans "may be manually underwritten in accordance with the Fannie Mae Selling Guide"). Lenders use the Selling Guide to determine whether loans they originate meet Fannie Mae's criteria and, once originated, lenders can deliver those loans to Fannie Mae for purchase. ER213.

Lenders also can license software from Fannie Mae that uses the criteria set forth in Fannie Mae's Selling Guide. ER195 ¶ 19; ER253 (explaining how the

---

[1] The Fannie Mae Selling Guide is available for download on the Internet. *See* https://www.fanniemae.com/content/guide/sel063015.pdf (last visited Aug. 3, 2015).

software gets "update[d] to align with the *Selling Guide*"). This software is known as Desktop Underwriter or DU. ER195 ¶ 18; *see* ER142 ¶ 2.7 (referring to DU software as "Licensed Application"); ER143 ¶ 3.1 (granting lender licensee "a non-exclusive, non-transferable license to (a) download (if applicable), access and use the Licensed Application through its Authorized Users only, and (b) use the associated Documentation"). Under these licensing agreements, Fannie Mae is the lender's limited agent when the lender obtains the applicant's credit report while using Desktop Underwriter. ER161. Lenders pay Fannie Mae a subscription fee to use the Desktop Underwriter software. ER148 ¶ 7.1; ER195 ¶ 19.[2]

When using Desktop Underwriter, the licensee lender inputs certain characteristics about the applicant and causes the applicant's tri-merge credit report (a consumer report reflecting credit information obtained from the three major credit bureaus—Equifax, Trans Union, and Experian) to be imported into Desktop

---

[2] Both the Federal Home Loan Mortgage Corporation ("Freddie Mac"), another government sponsored enterprise, and Fannie Mae recently have announced that they will no longer charge lenders to use their automated underwriting systems. Freddie Mac stopped charging lenders for its software product, the Loan Prospector, on June 1, 2015. *See* http://www.loanprospector.com/about/#howmuch (last visited Aug. 3, 2015) ("Beginning Monday, June 1, 2015, Loan Prospector® is free for all new loan submissions. We made this change to remove the cost barrier of a tool that provides greater certainty that the loans you sell to Freddie Mac meet our requirements."). Fannie Mae announced its change on June 23, 2015, explaining that "technology fees" should not "get in the way of lenders using our technology to its full potential." *See* http://www.fanniemae.com/portal/about-us/media/corporate-news/2015/6263.html (last visited Aug. 3, 2015).

Underwriter.  ER195 ¶ 21.  To obtain the tri-merge credit report, lenders must have a separate contract with consumer reporting agencies.  ER161 ¶ 11 (requiring the lender to "maintain a separate agreement with any 'consumer reporting agency' that is accessible via the Licensed Application and from which it orders 'consumer reports,' as those terms are defined by the FCRA").  Fannie Mae is not a party to those separate contracts, and the complaint does not allege otherwise.  Using Desktop Underwriter, lenders can determine for themselves whether a potential loan would be eligible for purchase by Fannie Mae based on the information the lender entered or caused to be imported into the software.  ER195-ER196 ¶¶ 18, 22-23.  The lender makes this determination by using the output from Desktop Underwriter known as the DU Underwriting Findings.  ER195-ER196 ¶ 22.

Loans that are underwritten by Desktop Underwriter or that are manually underwritten by the lender consistent with the Fannie Mae Selling Guide can be delivered to Fannie Mae.  ER195 ¶ 18; ER213.  If the Desktop Underwriter software reports "Refer with Caution," the loan "is ineligible for delivery as a DU loan" to Fannie Mae.  ER213.  But that does not mean that the loan cannot be sold to Fannie Mae.  The DU Underwriting Findings state that "any loan casefile that receives a Refer with Caution recommendation may be manually underwritten in accordance with the Fannie Mae Selling Guide."  ER213.  In that case, the lender may do the analysis on an applicant's loan file manually using the Fannie Mae

Selling Guide, rather than electronically using the Desktop Underwriter software. ER213.

## B.    Fair Credit Reporting Act

Plaintiffs' FCRA claim depends upon Fannie Mae being a "consumer reporting agency."    15 U.S.C. § 1681e(b) (requiring a "consumer reporting agency" to "follow reasonable procedures").    Congress has defined "consumer reporting agency" to mean:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*Id.* § 1681a(f).  To be a "consumer reporting agency," an entity must meet each requirement set forth in Section 1681a(f).  The issues in this appeal are whether the complaint plausibly alleges that Fannie Mae itself engaged "in the practice of assembling or evaluating consumer credit information or other information on consumers" and, even if it did, whether it plausibly alleges that Fannie Mae furnished such a report to a "third party."

The Federal Trade Commission ("FTC") has issued guidance relevant to these issues.  Courts frequently rely on and defer to the FTC's guidance.  *E.g.*, *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007) (relying on

interpretative guidance); *Estiverne v. Sak's Fifth Ave.*, 9 F.3d 1171, 1173 (5th Cir. 1993) (deferring to the FTC's interpretive guidance). Before enactment of the Consumer Financial Protection Act of 2010, the FTC had been charged with interpreting the FCRA. 15 U.S.C. § 1681s(a) (1998). Although the Consumer Financial Protection Bureau now has primary regulatory oversight over the FCRA, the FTC still retains enforcement authority under the FCRA. 15 U.S.C. § 1681s(a).

The FTC has stated that an entity must be the one "assembling or evaluating" consumer information to be a "consumer reporting agency." A provider of software is not "assembling or evaluating" anything when another entity (such as a lender) uses its software to assemble or evaluate consumer information. Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations* at 29 (July 2011) ("*40 Years Report*").[3] In addition, the FTC has stated that an agent's sharing of information with its principal does not meet the statutory requirement of "furnishing consumer reports to third parties." *Id.* at 10, 31. The FTC has explained that "[a]n agent or employee that obtains consumer reports does not become a [consumer reporting agency] by sharing such reports with its principal or

---

[3] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last visited Aug. 3, 2015).

employer in connection with the purposes for which the reports were initially obtained." *Id.* at 31.

In addition, Congress was aware of and addressed Fannie Mae's Desktop Underwriter when it amended the FCRA in 2003. *See* 15 U.S.C. § 1681g(g); H.R. Rep. No. 108-263 at 48-49 (2003) (discussing Fannie Mae's automated underwriting system). In Section 1681g(g), Congress specifically addressed a lender's use of an automated underwriting system such as Desktop Underwriter. 15 U.S.C. § 1681g(g); *see* ER195 ¶ 18 (describing Desktop Underwriter as an "automated underwriting system"). Section 1681g(g) requires mortgage *lenders* to disclose to consumers the credit score the lender receives from consumer reporting agencies. Notably, Congress did not impose any FCRA requirements on Fannie Mae for a lender's use of an automated underwriting system. Instead, Congress expressly exempted Fannie Mae from the requirements of this provision. *See* 15 U.S.C. §§ 1681g(g)(1) (imposing requirements on "any person"); 1681g(g)(1)(G) (excluding an "enterprise" from these requirements); 1681g(g)(1)(B)(iii) (defining "enterprise" to include Fannie Mae). [4] Congress also provided that a lender's disclosure of information obtained from an automated underwriting system is *not*

---

[4] An "enterprise" is defined as "the Federal National Mortgage Association and any affiliate thereof" and "the Federal Home Loan Mortgage Corporation and any affiliate thereof." 12 U.S.C. § 4502(10); *see* 15 U.S.C. § 1681g(g)(1)(B)(iii) (referring to the definition of "enterprise" in 12 U.S.C. § 4502).

the disclosure of information obtained from a consumer reporting agency. 15 U.S.C. §§ 1681g(g)(1)(B)(ii), 1681g(g)(1)(C).

In general, Section 1681g(g) imposes no additional disclosure requirements on a lender simply because the lender uses an automated underwriting system. In most cases, all the lender needs to provide is the "credit score and associated key factors supplied by a consumer reporting agency." *Id.* §§ 1681g(g)(1)(A), 1681g(g)(1)(B)(i).

If the automated underwriting system produces a "numerical credit score" and that score is shared with the lender, however, the lender needs to provide the numerical credit score to the consumer. *Id.* § 1681g(g)(1)(B)(ii). But the FCRA provides that this credit score from an automated underwriting system is *not* from a "consumer reporting agency." Instead, the provision states that "the score shall be disclosed to the consumer consistent with subparagraph (C)." *Id.* Subparagraph (C), in turn, provides that the credit score being disclosed is not one obtained from a consumer reporting agency. *Id.* § 1681g(g)(1)(C) (explaining the "disclosure[] of credit scores not obtained from a consumer reporting agency"). In other words, Congress recognized that a lender's use of Fannie Mae's software does not make Fannie Mae a consumer reporting agency.

11

**C.    Plaintiffs' Allegations Regarding Denial Of Credit**

Plaintiffs previously owned a house with a first and a second mortgage, which they found themselves struggling to pay.  ER197 ¶¶ 28-29.  Eventually, plaintiffs stopped paying their mortgages and entered into a short sale of their house.  ER198 ¶ 33.  A "short sale" is where a homeowner sells the house, with the lender's approval, for less than the amount due on the mortgage and is released from his or her loan obligation.  ER198 ¶ 34.  Plaintiffs have alleged that a short sale precludes obtaining financing for a new house for "a minimum of two (2) years."  ER198 ¶ 35.

Two years after their short sale, plaintiffs sought financing to obtain a new house.  ER198 ¶ 36.  They were denied financing on two separate houses that they attempted to purchase.  ER198-ER199 ¶¶ 36-40; ER200 ¶¶ 47, 49.  They allege that the Desktop Underwriter software indicated that there had been a foreclosure on their previous house.  ER199 ¶ 40; ER200 ¶ 49.  In a foreclosure, the mortgagee takes title to or forces a sale of the mortgaged property due to the mortgagor's default.  Plaintiffs allege that they were denied financing as a result.  ER199 ¶ 42; ER201 ¶ 50.  Plaintiffs further allege that lenders told them "that they would not be approved for financing because their own previous short sale was flagged as a 'foreclosure' which, per DU Guidelines, would prevent Plaintiffs from obtaining

financing for seven (7) years." ER199 ¶ 39. Plaintiffs allege that they did not have a foreclosure on their credit reports. ER199 ¶ 41.

Subsequently, plaintiffs obtained financing and purchased the first house they previously had tried to buy. Plaintiffs allege that they later were denied refinancing on this house. ER203 ¶¶ 62-63. Plaintiffs allege that "a 'foreclosure' notation prevented Plaintiffs from refinancing." ER203-ER204 ¶¶ 63, 67-69. Plaintiffs obtained the lender's DU Underwriting Findings associated with that application. The DU Underwriting Findings provided a "Refer with Caution" recommendation and explained that the application could "be manually underwritten in accordance with the Fannie Mae Selling Guide." ER213.[5]

## D.    District Court Proceedings

Plaintiffs sued Fannie Mae on a single claim, alleging a failure to adopt and/or follow reasonable procedures as a consumer reporting agency in violation of 15 U.S.C. § 1681e(b).

---

[5] In addition to manually underwriting a loan application that receives a "Refer with Caution," a lender now has the option of using a feature Fannie Mae added to software version 9.1 of the Desktop Underwriter system. This feature allows the lender to "instruct DU to disregard the foreclosure information on the credit report by entering" that the lender has confirmed the prior transaction was a short sale, not a foreclosure. ER251. As Fannie Mae has explained, the manner in which credit bureaus "code" short sales in a credit report affects whether the Desktop Underwriter software is able to identify them as short sales. ER231.

The district court correctly dismissed plaintiffs' complaint. The court held that plaintiffs could not state a FCRA claim because the complaint did not adequately allege that Fannie Mae itself is a "consumer reporting agency." As the district court explained, a software provider is not a consumer reporting agency under the FCRA because a software provider is not "assembling or evaluating" consumer information. ER11. The court acknowledged that plaintiffs "alleged that the DU system assembles and evaluates consumer information in order to provide a preliminary assessment of whether a loan would meet Fannie Mae's eligibility requirements." ER11-ER12. But that allegation could not save the complaint, because it was based on the argument "that because Fannie Mae's DU system assembles and evaluates consumer information, Fannie Mae is assembling and evaluating consumer information." ER12. As the court explained, "[i]t is not Fannie Mae that is assembling and evaluating the applicant's information. Rather, it is the software that Fannie Mae has licensed or leased to the lender which is [sic] assembles or analyzes the applicant's information." ER12 (emphasis in original). "Because Fannie Mae does not regularly assemble or evaluate consumer information," the district court declined to address "whether Fannie Mae meets the other three factors necessary to make it a consumer reporting agency." ER13 n.34.

The district court also noted that Fannie Mae asserted an alternative ground for dismissal. ER14. Fannie Mae contended that its DU software does not provide

information to "third parties" within the meaning of the FCRA. Rather, as Fannie Mae explained, its licensing agreement with lenders expressly provides that Fannie Mae acts as a limited agent for the lenders that use the DU system. ER14. Without addressing the language of the license agreement or the merits of the "limited agent" issue, the district court stated "plaintiffs have alleged that Fannie Mae functions independently of its subscribing lenders and that it is licensing or leasing its DU system to lenders for a fee." ER14.

After the complaint was dismissed and judgment had been entered for Fannie Mae, plaintiffs moved to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. They submitted a declaration of a mortgage professional as purportedly newly discovered evidence. The district court denied the motion. The district court held that its dismissal "was on the basis of plaintiffs' pleadings," rejecting the notion that it "improperly resolved disputed facts." ER1-ER2. The district court further held that "[p]laintiffs have not demonstrated that there is any newly discovered evidence." ER2.

## SUMMARY OF ARGUMENT

I.     An entity is a "consumer reporting agency" under the FCRA only if it assembles or evaluates consumer information. A licensor of software is not assembling or evaluating anything when a licensee of the software uses it to assemble or evaluate consumer information.

Plaintiffs do not and cannot dispute the foregoing. Instead, they argue that the complaint adequately alleges that Fannie Mae—not the Desktop Underwriter software or the lender using that software—is the one assembling or evaluating consumer information. As the district court recognized, however, the complaint's allegations fatally undermine plaintiffs' argument. That is, the complaint alleges that (1) lenders license Desktop Underwriter from Fannie Mae, (2) Desktop Underwriter "assembles[,] reviews, assesses and evaluates" consumer information at the lenders' direction, and (3) lenders use Desktop Underwriter to obtain a recommendation as to a loan's eligibility for sale to Fannie Mae. None of these allegations supports the contention that Fannie Mae is "assembling or evaluating" consumer information. To the contrary, they show (as the district court held) that lenders using the software are doing so.

Plaintiffs fail to confront these allegations. Instead, they selectively quote sentence fragments and legal conclusions from their complaint in an effort to demonstrate that they alleged that Fannie Mae is a consumer reporting agency. Yet, read in the context of the complaint and the documents incorporated by reference therein (without objection from the plaintiffs), these allegations state nothing more than that any "assembling or evaluating" is happening "through" the licensed Desktop Underwriter system—not by Fannie Mae. In addition, plaintiffs' conclusory allegations are devoid of any factual basis. Rather than state facts

16

supporting their allegations that Fannie Mae is "assembling or evaluating" consumer information, plaintiffs just repeat the words "assemble," "evaluate," or synonyms of those terms. As the Supreme Court and this Court have held, the mere recitation of the elements of a claim is not enough to save a complaint from a motion to dismiss.

Moreover, the district court's conclusion is confirmed by Section 1681g(g) of the FCRA. In this provision, the FCRA explicitly addresses a lender's use of an automated underwriting system such as Desktop Underwriter. The FCRA exempts Fannie Mae from this provision's disclosure requirements. Significantly, Section 1681g(g) also makes plain that information a lender obtains from Fannie Mae's automated underwriting system is not information obtained from a "consumer reporting agency."

II.   Even if plaintiffs sufficiently alleged that Fannie Mae assembles or evaluates their credit information (and the district court correctly concluded they did not), the district court's dismissal should be affirmed. To be a "consumer reporting agency," the FCRA requires an entity to furnish information to "third parties." This requirement excludes principal-agent relationships. Thus, an agent that assembles and evaluates consumer information is not a consumer reporting agency simply because that agent provides information to its principal.

Here, Fannie Mae does not provide consumer information to any third parties for two independent reasons: (1) Desktop Underwriter, not Fannie Mae, generates the findings on behalf of lenders; and (2) to the extent Fannie Mae plays any role, it does so as the lender's limited agent—under the express terms of the parties' license agreements. The licenses, which are incorporated by reference into the complaint, expressly provide that Fannie Mae is the lender's limited agent when consumer credit information is obtained and analyzed by Desktop Underwriter. Accordingly, the lender is not a "third party" under these circumstances; thus Fannie Mae cannot be a "consumer reporting agency."

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT FANNIE MAE IS A "CONSUMER REPORTING AGENCY"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. This means that a complaint must have "more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007); *see Johnson v. Federal Home Loan Mortg. Corp.*, __ F.3d __, 2015 WL 4231519 (9th Cir. July 14, 2015) (same).

The district court correctly held that plaintiffs' complaint cannot survive this standard. Under the plain language of the statute, an entity is a "consumer reporting agency" only if it is "assembling or evaluating" consumer information. Yet plaintiffs fail to allege "*factual* matter" that, if true, would establish that Fannie Mae assembles or evaluates consumer information. Instead, as to Fannie Mae itself, plaintiffs simply recite the elements of the cause of action and allege merely *legal* conclusions. Taken as a whole, plaintiffs' complaint alleges at most that a *lender* using the Desktop Underwriter software may be "assembling or evaluating" consumer information. But under the FCRA, a lender's use of Fannie Mae's software does not demonstrate that *Fannie Mae* is "assembling or evaluating" anything at all.

### A. Plaintiffs' Allegations Demonstrate That Their Claims Are Based On A Lender's Use Of Fannie Mae's Software, Not Any "Assembling or Evaluating" By Fannie Mae Itself

The district court correctly held that plaintiffs did not adequately allege that Fannie Mae itself is "assembling or evaluating" consumer information. As the district court explained, "plaintiffs are arguing that because Fannie Mae's DU system assembles and evaluates consumer information, Fannie Mae is assembling

and evaluating consumer information." ER12. Looking at the complaint, the district court concluded that plaintiffs allege at most that "[i]t is lenders which obtain an applicant's credit reports from credit reporting agencies and it is the lenders which input information about the applicant into the DU system, which then analyzes the information." ER12. Read as a whole, the allegations amount to this: "[i]t is <u>not</u> Fannie Mae that is assembling and evaluating the applicant's information. Rather, it is the software that Fannie Mae has licensed or leased to the lender which is [sic] assembles or analyzes the applicant's information." ER12 (emphasis in original).

In reaching this conclusion, the district court did not "disregard . . . extensive allegations." *Contra* Opening Br. 20. None of plaintiffs' allegations supports a plausible claim that Fannie Mae itself is "assembling or evaluating" anything. To the contrary, plaintiffs' allegations actually support the opposite conclusion. *Twombly*, 550 U.S. at 568 (explaining that the complaint itself undermined the plaintiff's claim). For example, plaintiffs argue that their complaint alleges that "Fannie Mae obtains, reviews and evaluates consumer credit information in advance of loan origination for its own underwriting purposes." Opening Br. 17 (quoting ER191 ¶ 2). But plaintiffs omit the first part of that allegation, which alleges that this review and evaluation is done "[t]hrough its automated underwriting system that it requires lenders to use throughout the country." ER191

20

¶ 2.  Without the omission, plaintiffs' allegation states:  "Through its automated underwriting system that it requires *lenders to use* throughout the country, Fannie Mae obtains, reviews and evaluates consumer credit information in advance of loan origination for its own underwriting purposes."  ER191 ¶ 2 (emphasis added). When read in its entirety and in the context of the other allegations in the complaint, this assertion plausibly alleges only that *lenders* "use" an automated underwriting system to "obtain[], review[] and evaluate[] consumer credit information." [6]

Nor did the district court decide facts or improperly rely on statements of Fannie Mae's counsel.  *Contra* Opening Br. 19-20.  Rather, the district court properly relied on plaintiffs' own allegations as well as documents attached to or incorporated by reference into the complaint.

In particular, the district court relied on plaintiffs' allegation that "Fannie Mae leases or licenses its DU system for *use by the lenders or mortgage loan brokers* and charges these lenders or brokers a fee for each mortgage application run through the DU system."  ER195 ¶ 19 (emphasis added) (complaint cited by district court at ER5 n.9); *see id.* ¶ 18 (alleging that "mortgage brokers and lenders submit residential mortgage applications through [Fannie Mae's] Desktop

---

[6] In addition, plaintiffs' argument that Fannie Mae obtained, reviewed or evaluated credit information is contradicted by other portions of the complaint and the documents incorporated by reference into the complaint.  *See* pp. 22-25, *infra*.

Underwriter automated underwriting system" (complaint cited by district court at
ER5 n.9)). The court further relied on plaintiffs' allegation that "Fannie Mae's *DU
system* assembles[,] reviews, assesses and evaluates all of the information it obtains
from the lender and/or broker, and the consumer reporting agencies and/or
resellers, including the consumer reports, and generates its own report." ER195
¶ 22 (complaint cited by district court at ER5 n.11 and ER12 n.32) (emphasis
added).

Plaintiffs contend this latter allegation supports their claim that Fannie Mae
is "assembling or evaluating" consumer information. Opening Br. 17. That is not
so. These allegations expressly state that it is the "*DU system*," which is used by
lenders, that does any "assembling or evaluating" of consumer information.
Although these allegations are "consistent with" *someone* "assembling or
evaluating" consumer information, they do not support a plausible claim that
Fannie Mae itself is assembling or evaluating that information. *In re Century
Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (being "consistent
with" plaintiffs' explanation is not sufficient to support a plausible claim).

The district court's conclusion is further supported by Fannie Mae's licenses
with lenders. These licenses are referenced in (and incorporated into) the
complaint and were properly considered by the district court. *Knievel v. ESPN*,
393 F.3d 1068, 1076 (9th Cir. 2005) ("documents whose contents are alleged in a

complaint" or upon which "the plaintiff's claim depends" may be "attach[ed] . . . to [a defendant's] motion to dismiss"). The Court "need not accept as true allegations contradicting documents that are referenced in the complaint." *Johnson*, ___ F.3d at __, 2015 WL 4231519, at *3 (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)); *see Tritz v. United States Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013) (same); *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1405 & n.4 (9th Cir. 1996) (same).[7]

These licenses demonstrate that plaintiffs' claim is founded upon their would-be lenders' licensing and use of the Desktop Underwriter software. ER158; ER182 (Desktop Underwriter is the "Licensed Application"). The licenses state that the "Licensed Application" includes features "designed (i) to support and facilitate Licensee's [i.e., the lender's] electronic underwriting of Mortgage Loan Applications and/or the performance of Prequalification Analyses [and] (ii) in the

---

[7] Plaintiffs concede these licenses are "reference[d]" in the complaint, but they contend that the licenses "lack[] any evidentiary support whatsoever." Opening Br. 19. But plaintiffs waived that argument by not making it to the district court. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2012) (holding that party waived objection to documents incorporated into complaint by not raising issue in district court); *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) (holding that "arguments not raised in the district court will not be considered for the first time on appeal."). Plaintiffs did not challenge the submission of the referenced licenses in either their opposition to the motion to dismiss or their motion for reconsideration. To the contrary, plaintiffs *relied* on these documents in the district court in both of those filings. ER102 n.8; ER34 n.1.

case of the Credit Retrieval Module, to facilitate the communication and the exchange of data between the Licensee and consumer reporting agencies accessible through the Credit Retrieval Module." ER158; ER182. Under these licenses, it is the lenders, not Fannie Mae, that use the Desktop Underwriter software. Lenders can "use" the licensed Desktop Underwriter "to request and receive Consumer Reports and/or analyze or evaluate Consumer Credit Data in underwriting Mortgage Loan Applications before a decision regarding any such application is made and communicated to any loan applicant(s)." ER160; ER184.

Plaintiffs quote the district court's reference to Fannie Mae's counsel's oral argument and contend that the court relied on "representations made by Fannie Mae's counsel" to support its conclusion that lenders, not Fannie Mae, order an applicant's credit report. Opening Br. 19. But the district court did nothing improper. The court simply was referencing Fannie Mae's counsel's explanation of what the complaint and documents incorporated by reference into the complaint showed. Indeed, after referencing Fannie Mae's counsel's argument, the district court relied on the licenses and explained that "the lender obtains an applicant's tri-merge consumer report from the three major credit reporting agencies, Equifax, Trans Union and Experian." ER5. Quoting those licenses, the district court explained, "[l]enders which license the DU system are required to 'maintain a

24

separate agreement with any consumer reporting agency . . . from which it orders consumer reports.'"  ER5 n.10 (quoting ER161 ¶ 11).[8]

None of the other allegations that plaintiffs identify contains "factual matter" to support a plausible claim.  *Iqbal*, 556 U.S. at 678.  Plaintiffs contend that their complaint adequately alleges that Fannie Mae is a "consumer reporting agency" because their "Complaint directly alleges that Fannie Mae is a 'consumer reporting agency.'"  Opening Br. 27 (citing ER193 ¶ 8).  To be fair, the complaint does state "Fannie Mae is a 'consumer reporting agency' as that term is defined by Section 1681a(f) of the FCRA."  ER193 ¶ 8.  This allegation, however, is nothing more than a statement of a desired legal conclusion, which is entitled to no weight on a motion to dismiss.  *Twombly*, 550 U.S. at 555.  As this Court has explained, a "general statement" that defendant's conduct meets an element of a claim "is a conclusion, not a factual allegation stated with any specificity."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).

Other allegations are similarly devoid of any factual basis.  They simply restate (or use synonyms for) the statutory language that a "consumer reporting agency" is one that "assembl[es] or evaluat[es]."  For example, plaintiffs allege that Fannie Mae or its Desktop Underwriter software "reviews and evaluates,"

---

[8] In any event, plaintiffs at most alleged that the tri-merge report is obtained "*[t]hrough the DU system*."  ER195 ¶ 21 (emphasis added).

25

"assembles[,] reviews, assesses and evaluates," or "compiles" consumer information. ER191 ¶ 2; ER195 ¶ 22; ER197 ¶ 26; *see also* ER196 ¶ 23 ("the DU Findings Report contains findings, conclusions, comments and results reached by Fannie Mae"). Because these allegations are mere "legal conclusions" or the "formulaic recitation of the elements," they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 681; *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008) ("[Plaintiffs] pleaded only ultimate facts, such as conspiracy, and legal conclusions. They failed to plead the necessary evidentiary facts to support those conclusions.").[9]

Finally, it is *plaintiffs* who attempt to rely on "evidence" outside the pleadings to argue that their claim is plausible. In moving to alter or amend the judgment, plaintiffs submitted the Lund declaration as allegedly newly discovered evidence. Plaintiffs rely on that declaration to argue the district court's dismissal

---

[9] Similarly, plaintiffs argue that they alleged that Fannie Mae is a "reseller" of consumer credit information. Opening Br. 18 (quoting ER192 ¶ 3). But that allegation is a legal conclusion, not a factual allegation. *Twombly*, 550 U.S. at 555. In any event, even if plaintiffs' allegation were assumed to be true, it still would not entitle plaintiffs to relief. As the district court recognized, plaintiffs did not bring their FCRA claim against Fannie Mae as a "reseller," and their complaint contains no cause of action against Fannie Mae as a "reseller." ER2. Nor did plaintiffs raise any "reseller" argument in their opposition to the motion to dismiss. To the contrary they conceded they have no such claim: "While there are several obligations imposed by the FCRA on re-sellers of consumer reports, none of them have been alleged here or apply to the instant facts as alleged in Plaintiffs' [complaint]." ER103 n.8.

26

was improper.  Opening Br. 19-20.  The Lund declaration, however, should not be considered on appeal.

As this Court has explained, appellate review on a motion to dismiss is limited to the complaint and documents incorporated by reference therein.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  The Lund declaration is neither.  Indeed, the Lund declaration was created *after* the complaint was filed.  *Marder*, 450 F.3d at 448-49 (refusing to consider letter created after complaint was filed); *Schneider v. California Dept. of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (holding that facts alleged outside the pleadings in an opposition to a motion to dismiss cannot be considered on appeal from the dismissal of the complaint).

Nor is there any other basis to consider the Lund declaration.  Plaintiffs have not raised the denial of their motion to alter or amend the judgment in their opening brief, and they thus have waived it.  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir.1999) ("arguments not raised by a party in its opening brief are deemed waived").  With good reason:  plaintiffs could not establish that the district court's denial was an abuse of discretion.  *Ta Chong Bank Ltd. v. Hitachi High Techs.*

*Am., Inc.*, 610 F.3d 1063, 1066 (9th Cir. 2010) ("The denial of a motion under Rule 59(e) to alter or amend the judgment is reviewed for abuse of discretion.").[10]

In any event, the Lund declaration does not support plaintiffs' FCRA claim. To the contrary, it provides additional support for the district court's conclusion that the lender (not Fannie Mae) orders the consumer's tri-merge report. Lund states that "mortgage brokers typically place an order to obtain a tri-merge consumer credit consumer report" and then "input the order number for the tri-merge report into the DU system, whereupon the tri-merged report is automatically imported into the DU system." ER50 ¶¶ 8-9. And while Lund does not "consider Fannie Mae's DU system merely to be a software conduit through which Fannie Mae provides mortgage brokers no evaluation of the information input in the DU system" (ER51 ¶ 13), she provides no factual support for her assertion. *Iqbal*, 556 U.S. at 678.

At bottom, plaintiffs' brief on appeal depends on a sleight of hand: reading allegations that when the Desktop Underwriter software does something, that is tantamount to Fannie Mae doing it. But fairly read, plaintiffs' complaint and the documents incorporated by reference therein do not allege factual matter that, if true, would demonstrate that Fannie Mae itself assembles or evaluates consumer

---

[10] As part of their motion to alter or amend the judgment, plaintiffs requested leave to file an amended complaint. ER46. That issue also is waived because plaintiffs did not raise it in their opening brief. *Smith*, 194 F.3d at 1052.

information.  As explained below, and as the district court correctly concluded, that is fatal to their claim.  ER12-ER13.[11]

### B.  Plaintiffs' Allegations Are Insufficient To State A FCRA Claim Against Fannie Mae

To be a "consumer reporting agency" subject to the FCRA, an entity must (among other requirements) engage "in the practice of assembling or evaluating consumer credit information or other information on consumers."  15 U.S.C. § 1681a(f).  Consistent with this statutory text, the FTC has opined that "[a] seller of software to a company that uses the software product to process credit report information is not a [consumer reporting agency] because it is not 'assembling or evaluating' any information."  *40 Years Report* at 29; *see* Advisory Opinion to Cast (Oct. 27, 1997) (taking the position that a software provider is not a consumer reporting agency "because it would not be assembling or evaluating information at all" even if the software it sold "could be said to assemble and evaluate" consumer

---

[11] Plaintiffs also argue that the Desktop Underwriting Findings are a "consumer report" under the FCRA.  Opening Br. 22-26.  But that issue need not be addressed by this Court.  Fannie Mae did not move to dismiss on that ground, nor did the district court sua sponte address it.  In any event, a "consumer report" means certain communications of information by a "consumer reporting agency." 15 U.S.C. § 1681a(d)(1).  Because the district court correctly concluded that the complaint does not plausibly allege that Fannie Mae is a consumer reporting agency, the Desktop Underwriting Findings cannot be a "consumer report."

information).[12]  By contrast, the user of the software might be.  As the FTC has explained, "a company that uses software to assemble, or otherwise assembles, consumer information (other than its own experiences with the consumer) for transmission to third parties may be a [consumer reporting agency]."  *40 Years Report* at 29.

Other courts have likewise construed the statutory text under circumstances similar to those here.  One court held Fannie Mae is not a "consumer reporting agency" under the FCRA because "Fannie Mae did not engage in any affirmative action; it merely allowed [the lender] to use its automated program to determine whether a loan to [the plaintiff] would be eligible for purchase by Fannie Mae." *Thomas v. Cendant Mortg.*, 2004 WL 2600772, at *4 (E.D. Pa. Nov. 15, 2004). Under those circumstances, "Fannie Mae itself did not assemble or evaluate" any consumer information.  *Id.*; *see Barnes v. Ditech.com*, 2005 WL 913090, at *4-*5

---

[12]    https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-cast-10-27-97 (last visited Aug. 3, 2015).

(E.D. Pa. Apr. 19, 2005) (when Desktop Underwriter was used, "Fannie Mae did not collect and evaluate Plaintiff's credit information"); ER13-ER14.[13]

The decisions holding Fannie Mae not to be a consumer reporting agency are correct. If, instead of using Desktop Underwriter, a lender were to use the published Fannie Mae Selling Guide to manually underwrite a loan, there could be no dispute that the lender (not Fannie Mae) would be the one assembling and evaluating a loan applicant's credit information. The fact that Fannie Mae publishes the Selling Guide would not make it a "consumer reporting agency." Fannie Mae's licensing of an electronic version of the Selling Guide should not alter that conclusion. The Desktop Underwriter software just automates the process. It allows a lender to use a software program that applies the criteria set forth in the Selling Guide. ER195 ¶¶ 18-19, 22. Either way, the lender is the one

---

[13] To be sure, another district court has refused to dismiss a similar complaint against Fannie Mae. *See Zabriskie v. Fed. Nat'l Mortg. Ass'n*, __ F. Supp. 3d __, 2014 WL 9887273 (D. Ariz. Apr. 17, 2014). But in applying the FCRA, the district court in *Zabriskie* eschewed the text of the statute. The court acknowledged that it was "[t]he *software* [that] 'assembles' and 'evaluates' consumer credit information." *Id.* at *4 (emphasis added). Yet, the court provided no reasoning based on the text of the statute as to how a lender's use of that software could mean that Fannie Mae was assembling or evaluating anything. Rather, the district court relied on the FCRA's general "purpose." The court explained that the FCRA was enacted to ensure that consumer reporting agencies act fairly with respect to a consumer's credit information. *Id.* at *5. But that explanation assumes the answer in that case, as the FCRA's "purpose" applies only if Fannie Mae meets the requirements of a consumer reporting agency under the statute.

doing any "assembling or evaluating"—regardless of whether the lender is using the published guidelines (i.e., the Selling Guide) or the automated guidelines (i.e., the Desktop Underwriter software).

Indeed, Congress expressly has provided that a lender's use of an "automated underwriting system" does not impose FCRA requirements on Fannie Mae. In Section 1681g(g), the FCRA imposes disclosure requirements on mortgage *lenders*, including lenders that use an "automated underwriting system" from an enterprise—like Desktop Underwriter. 15 U.S.C. § 1681g(g). As an "enterprise," Fannie Mae is explicitly excluded from these requirements. Section 1681g(g) applies to "[a]ny person who makes or arranges loans and who uses a consumer credit score," *id.* § 1681g(g)(1), but a "person" expressly "does not include an enterprise," *id.* § 1681g(g)(1)(G); *see id.* § 1681g(g)(1)(B)(iii) (referring to 12 U.S.C. § 4502 for definition of "enterprise"); 12 U.S.C. § 4502(10) (defining "enterprise" as "the Federal National Mortgage Association and any affiliate thereof").

Moreover, a lender's disclosure of information obtained from an automated underwriting system is expressly *not* the disclosure of information obtained from a consumer reporting agency. *Id.* §§ 1681g(g)(1)(B)(ii), 1681g(g)(1)(C). A lender has to disclose information from an automated underwriting system only in narrow circumstances—when the system produces a "numerical credit score" and that

32

numerical credit score is provided to the lender. *Id.* § 1681g(g)(1)(B)(ii); *see id.* § 1681g(g)(1)(B)(i). But even then, the FCRA makes clear that it is not the disclosure of information obtained from a "consumer reporting agency." Specifically, Section 1681g(g)(1)(B)(ii) provides that the numerical credit score "shall be disclosed to the consumer consistent with subparagraph (C)." *Id.* Subparagraph (C) expressly states that this is not the disclosure of information from a consumer reporting agency; rather, it is a "disclosure[] of [a] credit score[] *not obtained from a consumer reporting agency*." *Id.* § 1681g(g)(1)(C) (emphasis added). In other words, in Section 1681g(g), Congress recognized that *Fannie Mae* is not a consumer reporting agency.

The legislative history confirms this conclusion. In analyzing this provision, the House Committee Report explains that a "lender that uses an automated underwriting system" needs to provide the consumer only the credit score it obtained from a consumer reporting agency. H.R. Rep. No. 108-263 at 48 (2003). The legislative history further states that "if the lender uses a numerical credit score generated by an automated underwriting system used by the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation or their affiliates, and the score is disclosed to the lender, then that score must be disclosed by the lender to the consumer." *Id.* at 48-49. The legislative history confirms that Congress did not intend to impose these FCRA obligations on Fannie Mae: "This

33

section and the requirement for mortgage lenders to provide credit scores do not apply to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation or their affiliates." *Id.* at 49.

Section 1681g(g)(1)(B) thus demonstrates that Congress knew of Fannie Mae's automated underwriting system and specifically addressed it in the FCRA, without imposing any requirements on Fannie Mae. The structure of Section 1681g(g) shows that Congress made a distinction between credit scores provided by consumer reporting agencies and credit scores provided by enterprise-developed automated underwriting systems. This distinction would have been unnecessary if a lender's use of Desktop Underwriter could make an enterprise a consumer reporting agency, as plaintiffs suggest. If that were the case, lenders would have had to disclose any report from the automated underwriting system, because it would have been "obtained from a consumer reporting agency." 15 U.S.C. § 1681g(g)(1)(A)(i). The statute should not be interpreted in a manner that would make Section 1681g(g)(1)(B) superfluous. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) (courts "try to avoid, where possible, an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress").

*     *     *     *     *

34

In short, plaintiffs do not seriously dispute that the provider of software is not "assembling or evaluating" consumer credit information within the meaning of the FCRA. Opening Br. 20-21. Instead, they attempt to establish that they sufficiently alleged that Fannie Mae itself is the entity doing the assembling or evaluation. As explained above, they did not. The district court's dismissal should be affirmed.

## II. IN THE ALTERNATIVE, FANNIE MAE CANNOT BE LIABLE UNDER THE FCRA BECAUSE IT IS ACTING AS THE LENDER'S LIMITED AGENT

Even if plaintiffs sufficiently alleged that Fannie Mae is "assembling or evaluating" consumer information (which they did not), the district court's judgment should be affirmed.

The FCRA provides that an entity is a consumer reporting agency only if it "furnish[es] consumer reports to *third parties*." 15 U.S.C. § 1681a(f) (emphasis added). That statutory requirement excludes persons or entities that act as an agent in assisting another entity in obtaining consumer credit information. Construing this statutory requirement, the FTC has explained that "[a]n agent or employee that obtains consumer reports does not become a [consumer reporting agency] by sharing such reports with its principal or employer in connection with the purposes for which the reports were initially obtained." *40 Years Report, supra* at 31. Under such circumstances, the agent or employee is not "provid[ing] data to 'third

parties.'" *Id.*; *see id.* at 11 (explaining that when a consumer report is being shared as part of a lending transaction the "party is not 'providing consumer reports to third parties.'").

The FTC also has provided guidance regarding when an entity is acting as an agent for purposes of the FCRA. Under the FCRA, a party must have a "permissible purpose[]" in order to obtain a consumer report. 15 U.S.C. § 1681b(a) ("any consumer reporting agency may furnish a consumer report under the following circumstances and no other"). Section 1681b(a)(3)(A) provides that a permissible purpose exists where the recipient "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit." *Id.* § 1681b(a)(3)(A). The FTC has explained that an agent that might not otherwise have a permissible purpose to obtain a consumer report can rely on its principal's permissible purpose. *40 Years Report* at 41-42. For example, the FTC has opined that agents include real estate agents who "obtain a consumer report on behalf of a seller to evaluate the eligibility of a potential buyer who has offered to purchase the property." *Id.* at 41; *see id.* at 42 (same with respect to property managers "investigating applicants for apartment rentals").

Courts have applied these principles to hold that an entity receiving or analyzing consumer credit information is not a "consumer reporting agency" when

the entity does so as an agent providing assistance to its principal about a particular transaction. For example, a district court dismissed a similar case against Freddie Mac. That district court explained that when Freddie Mac's own automated underwriting software, Loan Prospector, "requests credit reports from the three repositories, it uses the lender's subscriber number, clearly indicating that the system is acting at the lender's behest." *Weidman v. Fed. Home Loan Corp.*, 338 F. Supp. 2d 571, 575 (E.D. Pa. 2004). As a result, any actions Freddie Mac took were as the lender's agent, because "[a]bsent a lender's specific request, [Freddie Mac] has no grounds, no permissible purpose, for accessing a consumer's credit information." *Id.* Based on the relationship between Freddie Mac and the lender, the court held that Freddie Mac "is acting much like an employee who obtains a credit report, reviews it, and passes it along with an evaluation to his employer, who uses this evaluation to make the ultimate decision of whether to offer credit." *Id.* Under these circumstances, Freddie Mac is "not subject to the FCRA's provisions relating to consumer reporting agencies" because it is only "sharing consumer reports with the lender, its principal, and assisting the principal by evaluating the consumer's credit information." *Id.*

Similarly, in *Mattiaccio*, another district court relied on *Weidman* to dismiss a complaint against an attorney who conducted a background investigation. *Mattiaccio v. DHA Group, Inc.*, 21 F. Supp. 3d 15, 24 (D.D.C. 2014) (finding

*Weidman* persuasive and analogous). The district court noted that "in the context of the FCRA, several courts have explained that an attorney who conducts an investigation on behalf of an employer-client is not a 'third party' in the same way that a credit bureau or detective agency would be." *Id.* at 22. Like in *Weidman*, the attorney "acted at the behest" of his principal "in preparing and evaluating Plaintiff's background investigation." *Id.* at 24.

Here, the licenses that plaintiffs referenced in their complaint demonstrate that Fannie Mae is acting as the lender's limited agent to the extent Fannie Mae (as opposed to its software) is doing anything with an applicant's information. These licenses state that the lender agrees that "in obtaining consumer reports via the Credit Retrieval Module and in the processing and evaluation of Consumer Credit Data by the Licensed Application for purposes of performing a Prequalification Analysis and/or making an underwriting recommendation, Fannie Mae, as owner of the Licensed Application . . . shall be the agent of Licensee." ER161 ¶ 10. Under the licenses, the Desktop Underwriter software obtains consumer reports and evaluates consumer information on behalf of the lender. ER161 ¶ 10. In so doing, to the extent Fannie Mae obtains the consumer report, Fannie Mae does so as the lender's agent and relies on the lender's "permissible purpose" under 15 U.S.C. § 1681b(a). ER161 ¶ 10 (providing that Fannie Mae, as the limited agent of the lender, is "expressly authorized by Licensee to[] obtain Consumer

Credit Data for the sole purpose of performing a Prequalification Analysis and/or making an underwriting recommendation"). Thus, Fannie Mae, as the limited agent of the lender, is not furnishing credit information to a "third party" when the Desktop Underwriter software provides findings to the lender.

## CONCLUSION

The judgment should be affirmed.

Dated: August 3, 2015

Respectfully submitted,

s/ Deanne E. Maynard
DEANNE E. MAYNARD
BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 887-8740
DMaynard@mofo.com

MICHAEL B. MILLER
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000

*Counsel for Defendant-Appellee Federal National Mortgage Association*

**STATEMENT OF RELATED CASES PURSUANT TO
CIRCUIT RULE 28-2.6**

Counsel for Fannie Mae is unaware of any related cases pending in this

Court.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 3, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  August 3, 2015                             s/ Deanne E. Maynard

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it is 8,923 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2010 in 14-point Times New Roman font.


Dated: August 3, 2015                           _____ s/ Deanne E. Maynard _____


dc-797876